IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| ALLIED WASTE SERVICES, LLC, | Civil Action No. 0:05-1519-CMC |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| | **GRANTING** |
| CITY OF ROCK HILL, | **PRELIMINARY INJUNCTION** |
| Defendant. | |

This matter is before the Court on Plaintiff's motion for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. Plaintiff Allied Waste Services, LLC ("Allied") sought to enjoin Defendant City of Rock Hill ("the City") from further enforcing the Ordinance which amended sections 17-62 and 17-68 of the Rock Hill City Code concerning the control of commercial waste disposal (the "Ordinance"). The court grants Plaintiff's motion for preliminary injunction as set forth below.

## BACKGROUND

Allied is a private waste hauler who provides commercial waste disposal services to certain companies and governmental entities located within the municipal limits of Rock Hill and in the surrounding unincorporated areas of York County. Defendant City enacted an ordinance effective June 28, 2004 regulating the disposal of waste within the municipal limits of Rock Hill.

The Ordinance was adopted following a budget workshop, at which the Rock Hill city manager presented and discussed issues related to the 2004/2005 budget with the city council. Among other topics, the city council considered ways to increase the City's control over the commercial garbage waste stream. The city manager presented five options to the council: 1) create

a new business license category for sanitation services so that the City would be able to recoup a greater portion of costs for usage; 2) authorize the city manager and city attorney to negotiate a franchise fee for private sanitation service providers; 3) adopt an ordinance that gives the City the right-of-first-refusal to commercial business sanitation services; 4) authorize city staff to pursue the development of policy to require commercial businesses using City sanitation service to have a contract for service; or 5) maintain current service level without procedural modifications. The city council adopted a modified version of the third option, requiring all commercial businesses to use Rock Hill's waste disposal services exclusively.

The Ordinance amended sections 17-62 and 17-68 of the City's municipal code. Section 17-62 was amended to read, in part: "Commercial and other business establishments shall be required to utilize the city's sanitation services and pay all the city established fees and costs associated with such services . . . ." Section 17-68 was amended to read, in part: "The city may in its sole discretion, permit private trash contractors to service industrial and/or commercial accounts using roll off units and compactors . . . ." The City currently does not provide waste services for roll off units and compactors.

The City has applied the Ordinance to the Rock Hill School District. On May 18, 2005, the school district, in compliance with its procurement policy, accepted competitive bids from Allied and other companies for its waste disposal contract. The district's prior contract, which expires on June 30, 2005, was held by Allied. On June 9, 2005, the school district issued a letter of intent pursuant to the South Carolina Procurement Code and the school district's internal procurement policy. The letter stated that Allied had submitted the lowest responsible bid for the school district's waste disposal contract, and the school district therefore intended to award the contract

2

to Allied.  The contract would commence on July 1, 2005.  However, on May 18, 2005 the City sent

a letter to the school district stating that the school district would be required to use the City's waste

services for school sites located within the city limits of Rock Hill.  The Rock Hill School District's

proposed contract with Allied covers facilities within and outside the city limits.  On May 26, 2005,

Allied filed its complaint and this motion, seeking to have the court enjoin enforcement of the

Ordinance until final disposition of the merits of the case.

## DISCUSSION

### A.    Preliminary Injunction Standard

In deciding whether to grant a motion for preliminary injunction, the Fourth Circuit has

adopted the "hardship balancing test" as set forth in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*,

550 F.2d 189, 193-96 (4th Cir. 1977); *Direx Israel, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802,

811 (4th Cir. 1992); *Palmetto Builders & Designers, Inc. v. UniReal, Inc.,* 342 F. Supp. 2d 468, 471

(D.S.C. 2004).  Under this test, a district court must weigh four factors: "(1) the likelihood of

irreparable harm to the plaintiff if the injunction is denied, (2) the likelihood of harm to the

defendant if the injunction is granted, (3) the likelihood that the plaintiff will succeed on the merits,

and (4) the public interest." *East Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004);

*Palmetto Builders & Designers, Inc.,* 342 F. Supp. 2d at 471.  Under the general preliminary

injunction standard, the first step requires a balancing of the first two factors.  *See Palmetto*

*Builders and Designers, Inc. v. Unireal, Inc.,* 342 F. Supp. 2d 468 (D.S.C. 2004).  The necessary

level of inquiry at the next step, success-on-the-merits, depends upon how decided the imbalance

of harms is.  *Id*.  The final step is to consider the public interest.  *Id*.

3

**B.    Balance of Harms**

If the Ordinance is enforced, Allied will be prohibited from providing commercial waste services in Rock Hill.  Allied has entered into contracts for waste disposal with businesses in Rock Hill, which contracts will be invalidated by immediate enforcement of the Ordinance.  In addition to losing its existing contracts, Allied will lose its potential new contract with the school district.[1] Indeed, the Ordinance requires all businesses in Rock Hill to use the City's sanitation services effective immediately, and the city manager recognized and admitted that this interference with existing contracts was a problem with the Ordinance as written.  The city manager has even stated that the City would allow all private vendor contracts to expire before assuming control of the business for those customers.  However, the city manager has no authority under the Ordinance to allow private waste disposal companies to continue providing services in Rock Hill.

Immediate enforcement of the ordinance also puts private contractors and businesses who violate the ordinance at risk of criminal prosecution.  This risk is not ameliorated by the city manager's alleged willingness to forego enforcement of the Ordinance - the fact remains that, but for the exercise of discretion by the City, any person found in violation of the ordinance could face criminal prosecution.  The immediate invalidation of Plaintiff's contracts, along with the risk of possible criminal prosecution, creates significant harm to Plaintiff if the injunction is not granted.

The result if this injunction is granted is preservation of the *status quo*, in which case the injury suffered by the City, by contrast, is not severe.  Defendant has alleged that without this

---

[1] The school district contract, which is scheduled to commence July 1, 2005, is considered only for purposes of the balance of harms and preemption analyses.  Because it is not an existing contract, it is not a factor in the court's analysis of the contract clause issue.

Ordinance, the vitality of its sanitation system is threatened. However, though the City has historically spent more money operating its sanitation department than it receives in revenue, the commercial area of its service has not been operating at a loss. The City's commercial waste department controls the vast majority of the commercial waste market in Rock Hill and is projected to make a profit even without the Ordinance.[2] The stated reason for passing the Ordinance, according to the policy issue paper submitted for the city council's consideration, was to raise revenue and gain control over the commercial sanitation market. Private vendors had recently become competitive with the City for these services and were able to undercut City rates. The City expressed concern about being forced out of business by this competition, after which it predicted the private providers would increase their rates, but the City has not indicated that such threat is immediately impending. The City is still free to compete for commercial sanitation customers even without the protection of the Ordinance. Based on the record before the court, Allied has produced evidence that the balance of harms tips decidedly in its favor.

Courts have also found that when a plaintiff alleges deprivation of a constitutional right, no further showing of irreparable injury is necessary. 11A Wright, Miller, & Kane, *Federal Practice & Procedure*, § 2948.1 (2d ed. 1995). The Fourth Circuit has followed this general approach, holding that a district court "has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right." *Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir. 1960); *Manning*, 119 F.3d at 264.

---

[2] According to the deposition of the city manager, the City has over 2,000 commercial customers, while only 300 customers are serviced by private vendors.

As discussed below, Allied has demonstrated a substantial likelihood of success on its constitutional claim.

### C.    Likelihood of Success On The Merits

#### 1.    Contract Clause

The contract clause of the United States Constitution provides, "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. CONST. Art. I, § 10.  The South Carolina Constitution reads similarly: "[n]o . . . law impairing the obligation of contracts . . . shall be passed . . . ." S.C. CONST. Art. I, § 4.  A three step analysis is applied to determine whether a law violates the federal and state contract clauses.  *United States Trust Co. v. New Jersey*, 431 U.S. 1 (1977); *Ken Moorhead Oil Co. v. Federated Mut. Ins. Co.*, 476 S.E.2d 481, 485 (S.C. 1996) ("In interpreting the Contract Clause of the South Carolina Constitution, this Court has followed federal precedent construing the federal Contract Clause.").  Initially, a court must determine whether the state law has operated as a substantial impairment of a contractual relationship.  *Id*.  If the court finds a substantial impairment, the state, in justification, must have a significant and legitimate public purpose behind the regulation.  *Id*.  Finally, if the state has a legitimate public purpose, the court determines whether the adjustment of contractual rights is based upon reasonable conditions and is of a character appropriate to the public purpose.  *Id*.

The City has the power, and has proffered a legitimate public purpose in support of the exercise of that power, to eliminate the local commercial garbage collection market and provide all garbage collecting services in the city (except to the extent it violates state law).  *See, e.g., Savage v. Waste Management, Inc.*, 623 F. Supp. 1505, 1511 (D.S.C. 1985) (recognizing that garbage collection is a traditionally local function of government, consistent with a long line of cases which

6

have upheld the authority of local governments to control exclusive rights to waste management); *USA Recycling, Inc. v. Town of Bablon,* 66 F.3d 1272, 1275 (2nd Cir. 1995) (cities may provide garbage pick up directly or rely on closely regulated private market to provide those services); *Ennis v. City of Ray,* 595 N.W.2d 305, 308 (N.D. 1999), *quoting* 7 Eugene McQuillin, Law of Municipal Corporations § 24.250 (3d rev. ed. 1997) ("Municipal corporations frequently perform the service of collecting and removing all garbage, trash, and similar substances, and prohibit any other persons from engaging in that business. A municipality may do this under its police or general power to provide for the health of its inhabitants and to prevent and abate nuisances ...."). However, the Ordinance as drafted is not a constitutional exercise of that authority. The Ordinance requires immediate enforcement, and in no way excepts existing contracts from its application. Defendant has not stated a sufficient public purpose to enact an ordinance that has such an immediate effect on existing contracts. Defendant could have imposed a lesser burden or taken a more moderate course in the drafting of the ordinance, made evident by the city manager's stated intention of letting such contracts expire. Furthermore, as discussed above, the city council was presented with several viable alternatives to the Ordinance that would have met the same objectives. Defendant has not offered sufficient justification for not considering such less-restrictive options. In light of the above, it is likely that Allied will be able to successfully prove that the Ordinance as drafted violates the federal and state contract clauses.

### 2.     Preemption By The South Carolina Consolidated Procurement Code

Allied argues that the Ordinance is preempted by the South Carolina Procurement Code. The preemption doctrine is grounded in Article VIII, Section 14 of the South Carolina Constitution. The Procurement Code, S.C. Code Ann. § 11-35-10, *et seq*., applies to every expenditure of funds

7

by a South Carolina "governmental body" under a contract for the provision of goods or services. S.C. Code Ann. § 11-35-40(2). While school districts are exempt from the definition of "governmental body," they are expressly subjected to the Procurement Code by § 11-35-70.

In compliance with the state Procurement Code, the school district has promulgated its own procurement policy. That policy provides that unless otherwise required by law or the terms of the policy, contracts between the school district and outside vendors must be awarded by competitive sealed bidding. The required procedures for competitive sealed bidding are set out in § 2-102 of the school district's procurement policy. This section provides in part:

> The contract shall be awarded with reasonable promptness by written notice to the lowest responsive and responsible bidder whose bid meets the specifications and criteria set forth in the invitation for bids.

School District's Procurement Policy § 2-102(7). This provision is consistent with the South Carolina Procurement Code, which requires that all contracts amounting to $25,000 or more be awarded by competitive sealed bidding to the lowest bidder that meets the stated qualifications. S.C. Code Ann. § 11-35-1520. As enforced by Defendant, the Ordinance directly conflicts with the requirements of the school district's procurement policy and the South Carolina Procurement Code.

The City argues that the Ordinance does not violate the Procurement Code because the Ordinance does not give the school district the discretion to procure its own waste collection services, and Defendant argues that the Procurement Code only applies when the public body is exercising discretion in procuring goods or services. However, the Procurement Code clearly states that it applies to *"every expenditure of funds"* by a school district. S.C. Code Ann. § 11-35-40(2) (emphasis added). Because school districts frequently cross city and county lines, it would hardly

8

be in keeping with the intent of the Procurement Code to force such entities to go through multiple procurements in order to comply with a local ordinance.[3]

The Ordinance itself states that it is enacted in compliance with the Home Rule Act of 1975, S.C. Code 5-7-30. Local ordinances enacted pursuant to the Home Rule Act are invalid if they conflict with the constitution or general laws of South Carolina. *Carolina Power & Light,* 471 S.E.2d 137, 139 (S.C. 1996); *Hospitality Assoc. of South Carolina, Inc. v. County of Charleston, et al.,* 464 S.E.2d 113 (S.C. 1995). Where there is a conflict between a state statute and a city ordinance, the ordinance is void. *City of Charleston v. Harper,* 410 S.E.2d 569, 571 (S.C. 1991).

If the state had intended to provide an exception for waste disposal services within the Procurement Code, it would have done so. For example, the federal government has expressly provided through the Resource Recovery and Conservation Act that federal agencies and instrumentalities comply with state and local waste disposal regulations. *See* 42 U.S.C.S. § 6961; *Parola v. Weinberger*, 848 F.2d 956 (9th Cir. 1988). The State of South Carolina has no similar statute.

### 3.    Selective Enforcement

The problems with the Ordinance are compounded by the considerable discretion that it gives to the City in its enforcement. Currently, the City does not have the capability to provide waste disposal services for roll offs and compactors. Consequently, it must allow private

---

[3] "The underlying purposes and policies of this code are ... to consolidate, clarify and modernize the law governing procurement by this State ... [and] to provide increased economy in state procurement activities and to maximize to the fullest extent practicable the purchasing values of funds of the State." S.C. Code § 11-35-20(a) & (f).

contractors to provide this service, if the City decides to provide it at all. The Ordinance gives the City complete discretion in choosing and allowing private contractors to provide waste disposal services for roll offs and compactors. Rather than regulating this discretion by providing for an application process or a public hearing, the Ordinance simply permits Defendant to enforce or not enforce the Ordinance as it chooses. Furthermore, under the Ordinance as written, Defendant can immediately invalidate contracts that the Plaintiff has already signed with Rock Hill customers.

Courts have consistently held that municipal ordinances cannot give unbridled discretion to the municipality in a manner that makes it impossible for the general public to predict how the ordinance will be applied. *See Langford v. City of Omaha*, 755 F. Supp. 1460, 1463 (D. Neb. 1989) (holding that the language of a municipal ordinance was "too vague to give adequate notice of what conduct is prohibited, and is too vague to ensure against arbitrary enforcement of the ordinance"); *Ellinos, Inc. v. Austintown Township*, 203 F. Supp. 2d 875, 887 (N.D. Ohio 2002) (striking down a municipal zoning ordinance because of its "nebulous and vague general standards and resultant unbridled administrative discretion"); *Lawson v. City of Kankakee*, 81 F. Supp. 2d 930, 935 (C.D. Ill. 2000) (finding a zoning ordinance unconstitutional because of the unbridled discretion that it gave to city officials). The Rock Hill Ordinance gives the City unbridled discretion to enforce or not enforce it as the City chooses. The city manager has further suggested that the City would utilize criminal sanctions contained within the municipal code to enforce the Ordinance. Such unpredictable and unbridled discretion is fatal to this Ordinance.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for preliminary injunction is granted. Defendant is hereby **ORDERED** to cease enforcement of the Ordinance until a trial on the merits can be had.  The parties are directed to confer and propose a schedule for this case no later than July 1, 2005.

Pursuant to Rule 65(c), Plaintiff will be required to post a bond in an amount to be determined by the court based on submissions by the parties.

**IT IS SO ORDERED.**

s/  Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

June 23, 2005
Columbia, South Carolina

C:\temp\notesB0AA3C\05-1519-tp-Allied Waste v. Rock Hill-preliminary injunction.wpd

11